### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| ALAN CLUKEY, | ) | |
| | ) | |
| Plaintiff[1] | ) | |
| | ) | |
| v. | ) | No. 2:11-cv-372-JHR |
| | ) | |
| TOWN OF CAMDEN, | ) | |
| | ) | |
| Defendant | ) | |

### MEMORANDUM DECISION ON MOTIONS IN LIMINE

The parties have submitted motions *in limine* for my consideration before the trial of this matter begins on July 25, 2016.  The defendant has filed one motion that addresses 13 different issues.  The plaintiff has submitted two motions.

## I.  The Defendant's Motion

### A.  Medical Records

The defendant "seeks to exclude any and all medical records."  Defendant's Motion at 1-4.  The plaintiff responds that he "conditionally concedes the Town's bid to exclude medical records][,]" so long as the town does not refer to or offer into evidence any of his medical records.  Plaintiff's Opposition to Defendant's Motions in Limine ("Plaintiff's Opposition") (ECF No. 91) at 5.  Plaintiff's concern notwithstanding, I see no suggestion by the defendant in its motion that it will "attempt to cherry pick records and information helpful to its burden of proof while excluding medical records that aid the plaintiff."  *Id.*  The motion to exclude the plaintiff's medical records

---

[1] The defendant's motion includes Dera Clukey as a named plaintiff in its caption.  Defendant's Motions in Limine ("Defendant's Motion") (ECF No. 88) at 1.  Dera Clukey was dismissed from this action on June 4, 2013, when Count IV of the complaint, the only count asserted by Dera Clukey, Complaint (ECF No. 1) ¶¶ 39-40, was dismissed by stipulation of the parties.  ECF No. 20.

is **GRANTED** without objection.  Should either party, nonetheless, attempt to use any portion of the medical records at trial, I will deal at that time with any objections that may be raised.

### B.  Dera Clukey

The defendant seeks to bar any testimony from Dera Clukey, the plaintiff's wife, regarding the effects on her of the events of which the plaintiff complains.  The plaintiff does not respond to this request, which accordingly is **GRANTED** without objection.

The defendant also states, without elaboration, that "[a]ny observations by [Dera Clukey] of Plaintiff must establish [that] they are related to not obtaining the jobs, not the layoff itself." Defendant's Motion at 4.  The plaintiff objects to this, and asserts that "Dera Clukey's testimony should not be limited by parsing the difference between the effects of 'not obtaining the jobs, not the layoff itself."  Plaintiff's Opposition at 5.  He refers to an earlier portion of his opposition, which I take to be that, even though he concedes that his layoff "was contractually permissible[,]" [t]he Town was obligated to mitigate or eliminate the adverse impact of Clukey's unemployment." *Id*. at 2.

To the contrary, the collective bargaining agreement (CBA) that is the basis of the plaintiff's claims cannot reasonably be read to require the defendant to "mitigate or eliminate" any adverse effects of the plaintiff's layoff, which was the cause of his unemployment.  The CBA specifically contemplates layoffs.  Agreement Between Town of Camden and Camden Police Benevolent Association (ECF No. 1-2) Article 19 § 3.  The only obligation imposed on the town after an employee covered by the CBA is laid off is to abide by that employee's recall rights for 12 months from the date of the layoff.  *Id.*  The layoff itself was not a violation of the CBA, nor of the plaintiff's property interest in his dispatcher job.  *See, e.g., Dunn v. County of Erie*, No. 92-CV-0511E(M), 1993 WL 499694, at *3 (W.D.N.Y. Nov. 24, 1993). The alleged failure of the town

2

to observe the plaintiff's recall right, in which both this court and the First Circuit[2] have held that he had a constitutionally-protected property interest, is the injury in this case, and the only cause of damages about which the plaintiff may offer evidence.

## C.  Other Employees

The defendant next seeks to exclude "any testimony relating to any other employee and whether or not that employee was recalled[.]"  Defendant's Motion at 4.  The fact that *all* of the town's police dispatchers, of which the defendant was one, were laid off at the same time appears to me to be quire relevant, as is the possible fact that neither of the others was recalled or that one or more of them was recalled.  Beyond that, the extent of the defendant's request is unclear.  The plaintiff says that one of the other dispatchers did provide the town with his address in writing, which the plaintiff admittedly did not do.  Plaintiff's Opposition at 6.  Such testimony also appears to be relevant.

If the defendant means that other dispatchers, or other unidentified town employees, should not be allowed to testify about their own attempts to find work after being laid off and the effect on them of not being recalled, the motion appears to have merit.  In any event, because the intended scope of the motion is unclear, I will reserve ruling until the employees are presented, if they are in fact presented, to testify at trial.  When and if such a witness is to be called by the plaintiff, the

---

[2] *See, e.g., Clukey v. Town of Camden*, 717 F.3d 52, 53, 56, 58, 60 (1st Cir. 2013)  ("*Clukey I*") ("In reviewing the defendant's motion, the magistrate judge determined that Clukey *did* have a property interest in his right to be recalled[.]" (emphasis in original)); ("Although we have never addressed whether the right to be recalled following a lay-off can be a constitutionally protected property interest, we have addressed closely analogous situations[.]"); ("Thus, we must examine the language of the CBA itself to see whether it so narrows the Town's discretion to rehire Clukey that Clukey had a legitimate claim of entitlement to be recalled to police department positions for which he was qualified . . . .  We agree with the district court that the plain language of [Article 19 section 3] compels a conclusion that Clukey had a property interest in his right to be recalled."); ("Clukey's uncontested allegation that he received no notice either before or after the Town deprived him of a protected property interest in [recall to] employment is in itself sufficient to state a procedural due process claim under § 1983.").

3

plaintiff's attorney shall approach sidebar before initiating questioning of the witness so that this issue may be resolved before any testimony is heard by the jury.

### D.  Settlement Discussions

Without discussion, the defendant asserts that it "seeks to exclude any settlement documents/discussions including any request by Plaintiff as part of a settlement to rehire the employee." Defendant's Motion at 4.  The plaintiff responds that he intends to offer a letter written in 2009 from his attorney to the town asking that he be hired as a parking enforcement officer and offering in exchange to forbear from suing the town.  Plaintiff's Opposition at 7.  He contends that this was not an attempt to settle a claim because "[a]t the time, there was nothing to settle." *Id.*

Federal Rule of Evidence 408(a) prohibits admission of evidence "either to prove or disprove the validity . . . of a disputed claim or to impeach . . . furnishing, promising, or offering— or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim[.]"  The language of the letter as described by the plaintiff fits easily within this description.  He says that the letter will be proffered as "evidence of his attempt to find comparative work," Plaintiff's Opposition at 7, but that is not all that the letter shows.  The fact that the letter came from his attorney and that it offered not to sue in exchange for being rehired makes the letter precisely what the Rule prohibits.  The plaintiff can testify that in 2009 he asked the town in writing to hire him as a parking enforcement officer and that the town did not do so.  That establishes the existence of "an attempt to find comparative work" without the objectionable trappings found in the letter itself.  Should the town attempt to impeach the plaintiff's testimony, the plaintiff may renew his motion to admit the letter.

### E.  Alan Clukey

The defendant contends that the plaintiff "should not be allowed to discuss how the litigation of his recall rights affected him emotionally." Defendant's Motion at 4.  The plaintiff responds that the emotional distress that he has suffered due to the litigation was foreseeable when the town failed to honor his right to recall and that he can, therefore, "explain the emotional burden [that] the litigation has imposed upon him."  Plaintiff's Opposition at 7.

The defendant correctly states the law applicable to this claim by the plaintiff.  *E.g., Soto-Lebrón v. Federal Express Corp.*, 538 F.3d 45, 60 n.15 (1st Cir. 2008) (citing *Knussman v. Maryland*, 272 F.3d 625, 641 (4th Cir. 2001), for the proposition that "[g]enerally speaking, litigation-induced emotional distress is never a compensable element of damages.").  The plaintiff may not recover for the emotional distress caused by this litigation and, as a result, may not testify about it.

### F.  Michael Weed

The defendant seeks to bar any testimony from Michael Weed.  Defendants Motion at 5.  The plaintiff says that Weed "will not be on the plaintiff's final witness list."  Plaintiff's Opposition at 7.  I take that to mean that the plaintiff will not call Wood to testify.  The defendant's motion is therefore moot.

### G.  Paul Spear

The defendant seeks to exclude any testimony from Paul Spear, a former dispatcher who was given the parking enforcement position to which the plaintiff contends that he was entitled "without filing an application for employment in order to allow the transfer of the fire dispatcher . . . to a police dispatcher without filing a job application."  Defendant's Motion at 5.  This event apparently occurred six years before the plaintiff was laid off.  *Id.*  The fire department is not

covered by the CBA at issue here.  *Id*.  The defendant asserts that testimony about this event is irrelevant.  *Id*.

The plaintiff responds that Spear's anticipated testimony "would establish recent fabrication by the Town of its unilateral interpretation of the CBA provisions[,]" and that the plaintiff's knowledge of these events "was a contributing factor to Clukey's perception of not be[ing] valued as an employee and to his diminished self-esteem."  Plaintiff's Opposition at 8.

It is only the town's failure to recall the plaintiff after the layoff that may be considered by the jury as a cause of the plaintiff's emotional distress; events that occurred six years previously are not relevant to this claim.

It is not clear whether the CBA under which the plaintiff was employed was also in effect at the time of Spear's transfer; if it was not, the anticipated testimony is not relevant to the plaintiff's claim for that reason and too attenuated in time as well.  It may be relevant that the town has in the past allowed transfers between departments, but that testimony could be provided by a current town official without the need to call Spear.  There is the potential for the specific details of that transfer to confuse the issue before the jury and outweigh their possible relevance.  If such testimony were allowed, it would be up to counsel for the town to make the point that what might be allowed under the contracts is not the same as what the current CBA requires the town to do.

In any event, given the lack of necessary information in the parties' submissions, counsel are directed to approach sidebar if and when the plaintiff wishes to call Spear to testify so that I may rule on the admissibility of his proposed testimony before Spear is presented to the jury.

### H.  Diane Moody

The defendant seeks to exclude any testimony from Diane Moody, who it anticipates will testify about a statement made by the town's chief of police before the layoffs occurred, her observations of the plaintiff's depression, her own unsuccessful work search, and the denial of her

6

application for unemployment compensation benefits.  Defendant's Motion at 5-6.  The plaintiff responds that her testimony is admissible for the same reasons that he contended Spear's testimony is admissible, and for several more specific reasons.  Plaintiff's Opposition at 8-11.

First, while the defendant argues that the police chief is not the defendant here, rendering his statements hearsay, Defendant's Motion at 6, the plaintiff asserts that the police chief was "the Town's point man charged with the layoff of the dispatchers" and that the statement he made to Moody is "a prior inconsistent statement[] by the Town of its interpretation that the CBA excluded Clukey from recall as the administrative assistant[,]" and that it was a declaration against the town's interest by its authorized representative.  Plaintiff's Opposition at 8-9.  Neither side has informed the court of the actual statement by the police chief that is involved here.  I will need to hear that statement before I can determine whether it is necessarily inconsistent with the town's current position and/or was a declaration against interest.  At trial, the plaintiff should be prepared to demonstrate that the police chief's statement was effectively that of the town before offering this testimony.  The plaintiff's attorney is directed to approach sidebar when he intends to call Moody to the stand so that her testimony may be taken initially outside the presence of the jury, so that I can rule effectively on this particular issue.

The plaintiff acknowledges that the statement at issue "occurred before the layoff" but contends that it is "factually linked to the layoff" because it was "an announcement of the Town's intention not to do anything to rehire the dispatchers."  *Id*. at 10.  Again, I will need to hear Moody's testimony before I can rule on this justification.  However, I can rule at this juncture that the fact that the police chief's "statement was in response to more than three impassioned pleas from townspeople for the Town to do something to re-employ the dispatchers," *id.* at 11, is not admissible evidence in this case.

7

Next, the plaintiff asserts that "Moody was laid off, which qualified her for unemployment compensation benefits." *Id*. at 9. I assume that Moody was, like the plaintiff, one of the three police dispatchers who were laid off at the same time, a necessary fact unmentioned by either party. Even so, the fact that "[t]he Town misrepresented to the state board that Moody was terminated for cause[,]" is *not* admissible to "impeach[] the Town's interpretation of the CBA" by showing that "it was the Town's intention to burden the dispatchers with the economic burden of their layoff at any cost to the dispatchers[.]" *Id*. The issue presented to the jury is whether the town's interpretation of a specific provision of the CBA was correct or not; whether that interpretation was based on improper motives is irrelevant. The fact that Moody disputes the outcome of her application for unemployment compensation benefits is irrelevant and unduly prejudicial to the defendant. She will not be allowed to testify about her application for unemployment compensation benefits.

The plaintiff next asserts that Moody should be allowed to testify about her own work search because that testimony "is a product of the level of expert testimony that the Town will give to the jury concerning available jobs." *Id*. He attacks the anticipated testimony of the defendant's expert, the admissibility of which he does not challenge, and asserts that Moody "compiled significant rejections" from "more extensive and lengthy work search[] than did Clukey." *Id*. He says that her testimony "will offer empirical evidence that the advertisements [on which he expects the defendant's expert to rely] were not representative of the labor market that existed in this area [at the relevant time]." *Id*. at 10. All that Moody's testimony could offer on this point would be anecdotal, rather than empirical, evidence. Testimony proffered to show that the advertisements upon which the defendant expert may rely "were not representative of the labor market" would have to come from an expert witness. The defendant may certainly challenge the basis for the

expert witness's opinion on cross-examination, and Moody may testify that she searched assiduously for work and settled for a particular job after a particular length of time, but any further details of that search are not admissible.

Next, the plaintiff contends that Moody's testimony about "her first hand observations of Clukey from the March meeting with Chief Roberts through Clukey's second hospitalization" as a lay opinion "for the purpose of understanding Clukey as a vulnerable human being who was beaten down by the Town's constitutional abuse." *Id*. at 10. Moody may certainly testify about her observations of Clukey's apparent mental state at relevant times, once the basis for those observations has been established, but "her empathy from having the same experience with the layoff as did Clukey[,]" *id.,* is not a proper basis for those observations. The fact that Clukey "also experienced depression from the way the Town treated her after the layoffs[,]" *id*., and the details of her experience of that depression, even if assumed *arguendo* to be relevant, would be outweighed by the prejudice that could be caused, and the need to prolong trial by extensive cross-examination concerning the possible differences between her experiences and responses and those of the plaintiff.

## I.   Lawrence Dearborn

The defendant seeks to exclude all testimony from Lawrence Dearborn, who filed an application for the administrative assistant position after the layoff and was told that there was a more qualified applicant. Defendant's Motion at 6. It expects that the plaintiff will also ask Dearborn to testify about his own job search. *Id*. In response, the plaintiff directs the court to "[s]ee discussions in paragraphs 4 and 9, supra, except that Dearborn will not testify about Clukey's mental state." Plaintiff's Opposition at 11. I assume that this reference is to the plaintiff's discussion of the anticipated testimony of the "other employees" and Moody.

9

My ruling on Dearborn's anticipated testimony about his own job search is the same as the one I have made about Moody's anticipated testimony on that topic. To the extent that he will testify as would Moody about other topics, my ruling here is that same as that made with respect to Moody. I do not see how my discussion of the possible testimony of "other employees," at pages 3-4 above, has any further bearing on Dearborn's proposed testimony.

### J.   Randy Gagne

Randy Gagne is the current chief of police in the defendant town. Defendant's Motion at 6. The defendant anticipates that he will be called by the plaintiff to testify that he overheard the previous chief say to the dispatchers that he did not think that they had the qualifications to perform the job of administrative assistant. *Id*. at 7. It contends that this evidence is irrelevant, and points out that Gagne "did not even know which of the dispatchers was being addressed during this statement." *Id*.

The plaintiff responds that Gagne's deposition testimony about this statement by his predecessor is admissible for the reasons "discussed in detail, above." Plaintiff's Opposition at 11. I assume that this is a reference to Moody's anticipated testimony about a similar—or perhaps the same—statement by the prior police chief. For the reasons stated in my analysis of the motion to exclude Moody's testimony, I will need to know the plaintiff's basis for asserting that the prior police chief's statement may be considered to be that of the town and precisely what the statement was, before I can rule on its admissibility. Because this testimony will apparently be presented by deposition, the parties must submit to me as soon as possible the transcript of the deposition with the relevant portions highlighted, so that I can rule on this motion before trial starts. I will not delay the trial once it starts in order to perform this analysis.

I note that the defendant has not asked the court to exclude any other portion of Gagne's deposition testimony.  It may not, therefore, request exclusion of any other portion of that testimony in the submission to be made with respect to Gagne.

### K.  Prior Appeals

The defendant moves to exclude any reference to the two appeals filed and resolved in this case.  Defendant's Motion at 7-8.  The plaintiff responds that "the decision in the prior appeals are the best explanation for the jury of either how it evolved that they are limited to construing two words of an employment contract, how an employment contract can be the basis of a due process civil rights claim and that the basis for Clukey's damages is not the Town's failure to have given him a job but the failure to have given him notice of a[] job available for recall."  Plaintiff's Opposition at 12.

I will instruct the jury on the rules of law applicable to this case in its present posture, in accordance with the rulings of the First Circuit.  No jury is ever asked to interpret the rulings of an appellate court, any more than it may be tasked with interpreting the pre-trial rulings of a trial judge that may limit the evidence that will be presented to that jury.  The jury is not entitled to, and will not be given, a recitation of the reasons why it is given a particularly limited task.

### L.  Lost Profits

The defendant submits a citation concerning the type of evidence necessary to demonstrate lost profits.  Defendant's Motion at 8.  The plaintiff responds that he is "not claiming lost profits," Plaintiff's Opposition at 13, rendering the defendant's motion moot.

### M. Front Wages and Neville Lee

The defendant moves to exclude any demand for "front wages."  Defendant's Motion at 8-9.  It asserts that the plaintiff has presented no evidence of permanent disability, which it contends is necessary for an award of front pay.  *Id.*  The plaintiff agrees with the defendant, *id*. at 9, that

the issue of front pay is reserved to the court.  Plaintiff's Opposition at 13.  Accordingly, any evidence going to that issue may not be presented before the jury.

This does not mean that Dr. Neville Lee, apparently an expert witness to be called by the plaintiff, may not testify that "the likelihood of Clukey being hired during his work[ ]life expectancy at other work comparable to the [parking enforcement officer] or Administrative Assistant is minimal to none[,]" *id.* at 14, or, more accurately, between the date when he should have been given notice of the availability of those jobs and the date of the verdict.  Front pay is an award to compensate a plaintiff "for lost compensation during the period between judgment and reinstatement."  *Johnson v. Spencer Press of Me., Inc.*, 364 F.3d 368, 379 (1st Cir. 2004).  Thus, if the jury finds that the plaintiff was entitled to notice of the two jobs at issue, the damages that it could award to him would include the difference between the income that he did earn, or could have earned, from the date when notice should have been provided to the date of the verdict.  Whether placement in either job after the verdict is required or even possible, and what front pay should be awarded as a result of that determination, are questions for the court.  If the plaintiff wishes to present evidence from Dr. Lee regarding those questions, he must do so only after the jury has returned its verdict, and only if the verdict does not moot those questions.

## II.  The Plaintiff's First Motion

The plaintiff's first motion *in limine* seeks to exclude evidence from any of the town's witnesses as to the intent of the language at issue in the CBA because none of them was involved in the negotiation of that contract in 2007 or, alternatively, has any present memory of the intent of the language at that time.  Plaintiff's Motion in Limine to Exclude Testimony by Witnesses of Their Present Interpretation of the CBA ("Plaintiff's First Motion") (ECF No. 89).  The First Circuit found in *Clukey v. Town of Camden*, 797 F.3d 97 (1st Cir. 2015) ("*Clukey II*"), that the

12

following words in Article 19, Section 3 of the CBA were ambiguous and required factfinding at a trial:

> The affected employee shall file in writing his or her mailing address and telephone number, if any, with the Town Manager at his/her office and shall be obligated, as a condition of his/her recall rights for said twelve (12) month period, to continue to inform the Town Manager in writing of any change thereafter.

*Id*. at 101, 102-04 (emphasis omitted).

The plaintiff contends that only evidence of the intent of the parties to the CBA at the time it was negotiated, from the individuals involved in the negotiations, is admissible to address this ambiguity.  Plaintiff's First Motion at [2]-[3].  Because the town has listed no witnesses who can personally attest to the town's intent at that time, he asserts, he must prevail.  *Id*. at [4].

There are at least two problems with the plaintiff's position.  First, he ignores the fact that, under his definition of extrinsic evidence on this issue, he bears a burden at least equal to that of the town to present evidence of the intent of the union negotiators with respect to this language at the time the CBA was adopted.  He does not indicate that he has any such testimony to present. He cites no authority for the proposition that, should the town fail to present the necessary extrinsic evidence to support its interpretation, he need not present any extrinsic evidence in order for his interpretation to prevail.  In the absence of evidence that the town was the sole drafter of the CBA (making it something other than a collectively bargained agreement), the proponent of a particular interpretation of an ambiguous term of that contract bears the burden of proof with respect to that interpretation.  *See, e.g., Quesenberry v. Volvo Group N.A., Inc.*, Civil Action No. 1:09cv00022, 2010 WL 2836201, at *4-*5 (W.D. Va. July 20, 2010) (suggesting that plaintiff employees had proved that ambiguous provision of CBA should be interpreted as they claimed).[3]

---

[3] If neither party presents admissible extrinsic evidence of the meaning of the CBA language deemed ambiguous by the First Circuit, this court will decide what the ambiguous language means.  *See, e.g., Estate of Hardy*, 609 A.2d 1162, 1164 (Me. 1992); *accord, Malmsteen v. Universal Music Group, Inc.*, 940 F.Supp.2d 123, 131 (S.D. N.Y. 2013).

The second problem with the plaintiff's argument is that he defines extrinsic evidence too narrowly as a matter of law.  I have been unable to locate any decision of a Maine court, or of this court when construing Maine law, that limits extrinsic evidence in this context to testimony of individuals with direct, contemporaneous knowledge of the intent of the parties when entering into a contract.  There is case law that suggests that, in addition to the terms of the entire contract, a factfinder construing the ambiguous term of a contract may consider the history of the negotiations between the parties to the contract, the circumstances surrounding the negotiation of the contract at issue, and the history of dealing between the parties on the matter at issue, *Guilford Transp. Indus. v. PUC*, 2000 ME 31, ¶ 21, 746 A.2d 910, 916.

> If an ambiguity requires consideration of extrinsic evidence, a court must look to all surrounding facts and circumstances in order to ascertain the parties' intended meaning of the contract.  This includes any relevant course of performance, course of dealing, and usage of trade, as well as a party's own admissions, the party's actions or statements from which knowledge or reason to know may be inferred, and the usages and meanings of third persons with which the party probably was familiar.

*JA Apparel Corp. v. Abboud*, 682 F.Supp.2d 294, 303 (S.D.N.Y. 2010) (citations and internal punctuation omitted).

"The term 'extrinsic evidence' is imprecise but includes proof of negotiations between the parties, their post-contract conduct, and general trade practice."  *National Tax Inst., Inc. v. Topnotch at Stowe Resort & Spa*, 388 F.3d 15, 19-20 (1st Cir. 2004).   It also includes the parties' prior course of dealing.  *Den Norske Bank AS v. First Nat'l Bank of Boston*, 75 F.3d 49, 53 (1st Cir. 1996).  Clearly, extrinsic evidence in the context applicable in this case is not limited to direct personal knowledge of individuals involved in negotiating the contract containing the ambiguous term at issue.  For example, Judge Woodcock of this court suggested that the deletion of a portion of the contract clause at issue from a subsequent contract could be extrinsic evidence of intent, as

well as the context of the agreement at issue, the nature of the industry in which the parties were involved, and the circumstances of the parties at the time the agreement was signed. *Officemax Inc. v. Sousa*, 773 F.Supp.2d 190, 206 (D. Me. 2011).

The plaintiff suggests that any testimony other than direct personal testimony of individuals involved in negotiating the CBA will be self-serving statements about the "unilateral secret intent" of the town. Plaintiff's First Motion at [2]. The testimony of an individual who is responsible for administration of a negotiated contract but who was not involved in its negotiation is not *per se* self-serving or evidence of a secret intent behind the contract term. Evidence of an undisclosed and therefore secret intent would have to be evidence of such intent at the time of execution of the agreement, which it appears will not be provided in this case. A jury will determine whether otherwise admissible testimony is sufficiently self-serving that it should not be credited, in whole or in part. That is a matter for closing argument.

The plaintiff's first motion *in limine* is denied. This does not mean, however, that testimony concerning the intent of the contract language found ambiguous by the First Circuit from individuals with an attenuated relationship with the CBA will automatically be admitted.

### III. The Plaintiff's Second Motion

The plaintiff moves to exclude testimony concerning his possible right to recall to any jobs other than those "that became available within the police department within the twelve months following his layoff, a parking enforcement officer (PEO) and an administrative assistant (AA)." Plaintiff's Motion in Limine to Exclude Testimony Concerning Whether the CBA Limited Clukey's Recall Rights Solely to a Dispatch Position ("Plaintiff's Second Motion") (ECF No. 90) at [1]. He asserts that the First Circuit found in *Clukey I* that the language upon which the town relies to support its position that the CBA only required that he be recalled when a dispatcher position became available was ambiguous "was never pleaded as an affirmative defense of a

15

condition precedent." *Id*. at [2]. Because the First Circuit held that the language of the CBA on this point was ambiguous as a matter of law, he contends, he is entitled to a hearing under *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985).

Allowing the town to argue at trial that the CBA limited his recall rights to a dispatcher position, the plaintiff asserts, would be "yet another unconstitutional violation of Clukey's due process rights." Plaintiff's Second Motion at [4]. He argues that the court will be "facilitating a protracted violation of Clukey's due process rights by holding a hearing in which the passage of time has eliminated his ability to meet his burden of factual proof." *Id*. This argument is unpersuasive.

The question of whether the CBA limits the plaintiff's recall rights to a position as a police dispatcher, if it is derived from an ambiguous term of the CBA, is no more factually dependent than the question of whether the language of the CBA required the plaintiff to file his address with the town manager in order to be considered for recall. The fact that considerable time has passed since the CBA was negotiated, making it difficult to find first-person testimony as to the meaning of the applicable phrase, does not implicate the plaintiff's constitutional rights any more than it compels a finding in his favor with respect to the question of whether an employee had to provide written notice of his contact information as a condition precedent to the exercise of whatever recall rights the CBA might provide.

Moreover, the First Circuit in *Clukey I* expressly stated that it did not "decide the meaning of" the "treated separately" language in the CBA, but rather found it to be ambiguous and so unavailable as a basis for dismissal of the plaintiff's complaint. 717 F.3d at 58-59.

The town's objection to this motion ignores the plaintiff's statement that his recall claim at trial will be limited to the PEO and AA positions within the police department. Defendant's

Objection to Plaintiff's Motion in Limine ("Defendant's Second Opposition") (ECF No. 92).  It begins its opposition to the plaintiff's motion with an assertion that he takes the position "that any job that opened up in the Town was available to Plaintiff and required notice."  *Id*. at 1.  It is now clear that the plaintiff does not take that position.

Even if the First Circuit had definitively found that the "treated separately" language in the CBA was ambiguous for all purposes, it did not resolve that ambiguity, leaving it for resolution by the jury.  That means that the defendant may argue that "[t]he CBA only applied to union police officers and dispatch," making the PEO and AA positions independent of its terms.  *Id*. at 2.  This is not an argument that the "treated separately" language created another condition precedent to recall.

I agree with the defendant, *id*., that its position means that the plaintiff's recall rights were not necessarily limited to the dispatch position, but might also include police officer positions, so the plaintiff's motion is granted to that extent, but the defendant will not be precluded from arguing that the PEO and AA positions were not positions to which the plaintiff could be recalled under the terms of the CBA.  Nothing in *Clukey I* nor *Loudermill* requires a different ruling on the instant motion.[4]

### IV. Conclusion

The defendant's motions *in limine* A, B, D, E, and K are **GRANTED.**  The defendant's motions *in limine* F and L are **MOOT**.  Ruling is reserved, with the exceptions granting portions of the motions as noted, on the defendant's motions *in limine* C, G, H, I, J, and M.  The plaintiff's first motion *in limine* is **DENIED**; his second motion *in limine* is **GRANTED IN PART**.

---

[4] *Loudermill* dealt with a dismissal from employment, a termination of employment.  470 U.S. at 535.  There is no sense in which the defendant's failure to recall the plaintiff to employment constituted a termination of ongoing employment.

Dated this 19th day of July, 2016.

                                                    /s/  John H. Rich III
                                                    John H. Rich III
                                                    United States Magistrate Judge